**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephine Baldauf, | No. CV-19-08243-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Before the Court is Plaintiff Stephine Baldauf's appeal of an administrative law judge's ("ALJ") denial of her application for disability insurance benefits and supplemental security income. The Court has considered Ms. Baldauf's Opening Brief (Doc. 13, Pl. Br.), Defendant's Answering Brief, (Doc. 14, Def. Br.) and Plaintiff's Reply (Doc. 15, Reply). After reviewing the briefs and the Administrative Record (Doc. 12, R.), the Court reverses the ALJ's decision.

## I.    BACKGROUND

Plaintiff Stephine Baldauf is a 33-year-old who allegedly suffers from several physical and mental impairments including bipolar disorder, anxiety, agoraphobia, post traumatic stress disorder, and alcohol use disorder. (R. at 30.) An ALJ denied Ms. Baldauf's application for benefits. (*Id.* at 37.) The matter then went to the Social Security Administration's Appeals Council. During the pendency of the appeal, Ms. Baldauf commissioned Dr. Ray Lemberg to provide an additional medical report and submitted it to the Appeals Council. (*Id.* at 8.) The Appeals Council denied the appeal,

making the ALJ's ruling the final decision of the Commissioner of Social Security (the "Commissioner"). (*Id*. at 7.) Ms. Baldauf then filed suit.

## II.   LEGAL STANDARD

The Court only reviews the challenged portions of an ALJ's decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

To determine whether a claimant is disabled under the Social Security Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At step one, the ALJ determines whether the claimant is

1   presently engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If so,
2   the claimant is not disabled, and the inquiry ends.  *Id.*  At step two, the ALJ determines
3   whether the claimant has a "severe" medically determinable physical or mental
4   impairment.  *Id.* § 404.1520(a)(4)(ii).  If not, the claimant is not disabled, and the inquiry
5   ends.  *Id.*  At step three, the ALJ considers whether the claimant's impairment or
6   combination of impairments meets or medically equals an impairment listed in a certain
7   federal regulatory provision.  *Id.* § 404.1520(a)(4)(iii).  If so, the claimant is disabled.  *Id.*
8   If not, the ALJ proceeds to step four.  *Id.*  At step four, the ALJ assesses the claimant's
9   residual functional capacity ("RFC") and determines whether the claimant is capable of
10  performing past relevant work.[*]  *Id.*  § 404.1520(a)(4)(iv).  If so, the claimant is not
11  disabled, and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step and
12  determines whether the claimant can perform any other work in the national economy
13  based on the claimant's RFC, age, education, and work experience.  *Id.*
14  § 404.1520(a)(4)(v).  If so, the claimant is not disabled; if not, he is disabled.  *Id.*

15  **III.   DISCUSSION**

16        Ms. Baldauf argues that the case should be remanded for three reasons.  First, she
17  alleges that the ALJ should not have ignored the treating psychiatrist's opinion.  Second,
18  according to Ms. Baldauf, the ALJ improperly rejected the nurse practitioner's
19  statements.  Third, the ALJ did not have a chance to consider a medical report created
20  while this matter was before the Appeals Council and is now part of the record.  The
21  Court now addresses each argument in turn.

22        **A.     ALJ's Rejection of a Psychiatrist's Medical Statements**

23        Ms. Baldauf argues that the ALJ did not provide sufficient reasons for rejecting
24  her treating psychiatrist's medical opinion.  (Pl. Br. at 5.)  According to Ms. Baldauf, the
25  report found that she could not work or go to school, or if she could, she would need a
26  structured or supervised setting.  (*Id.*)  The Commissioner argues that the evidence Ms.
27  Baldauf refers to is not actually the psychiatrist's opinion.  (Def. Br. at 7.)  Instead,

28  _____

[*] "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).

according to the Commissioner, the psychiatrist reviewed a behavioral health technician's assessment and made a diagnosis with little commentary.  (*Id*.)  This Court disagrees with the Commissioner's characterization of the psychiatrist's report.

Though the psychiatrist entrusted a behavioral health technician to write the bulk of the report, he appears to have made his diagnosis based on the statements in the report, thus adopting it as his own.  A doctor who supervises a team of therapists treating a claimant may be considered a treating physician.  *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003).

In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and other evidence," including medical opinion evidence.  20 C.F.R. § 404.1545(a)(3); *see* 20 C.F.R. §§ 404.1513(a)(2), 404.1527.  The ALJ is required to evaluate and weigh every medical opinion in the record.  20 C.F.R. § 404.1527(c).  The type of relationship a medical source has with someone seeking social security benefits provides a starting point for deciding how much weight to give that source's opinion about a claimant. Generally, the views of doctors who have treated a claimant get top priority.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).   Opinions of doctors who have examined but not treated a claimant are next in rank.  *Id*.  Those doctors who have neither treated nor examined a claimant generally get the least consideration.  *Id*.  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id*. An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings."  *Id.*

Given his long-term care for Ms. Baldauf, the psychiatrist is a treating physician. (R. at 559, 1166, 1193.) After summarizing Ms. Baldauf's symptoms and medical history, the psychiatrist's report assessed her ability to function in the world.  Among the assessments in the report were Ms. Baldauf's inability to attend work or school, inability to perform at the appropriate developmental level, and the need for structured

settings. (R. at 1056.) Ultimately, the psychiatrist determined that Ms. Baldauf had a serious mental illness, needed a support network, and reiterated that she is unable to work. (R. at 1057.)

The Commissioner notes that the ALJ cited the exhibit which contained the psychiatrist's statements. (Def. Br. At 8.) Ms. Baldauf, however, correctly notes that the exhibit is nearly 400 pages long and the ALJ does not cite the section containing the psychiatrist's statements about her ability to work. (Reply at 2-3.) Thus, either under the specific and legitimate reasons test that Ms. Baldauf proposes or under the germane reasons test that the Commissioner asks the Court to adopt, the ALJ erred in not giving sufficient reasons for rejecting the psychiatrist's testimony. The ALJ said that she based her decision on the whole record. (R. at 33.) However, she does not make clear which parts of the record contradict the psychiatrist's assessment concerning Ms. Baldauf's ability to work and why the former should control. The Court must remand so that an ALJ may further consider the treating psychiatrist's opinion.

**B.     ALJ's Rejection of the Nurse Practitioner's Medical Statements**

When assessing a claimant's RFC, the ALJ considers not only "acceptable medical sources" such as physicians but also other medical sources. 20 C.F.R. §§ 404.1545(a)(3), 404.1527(a)(1). Social Security Administration regulations in effect at the time Ms. Baldauf filed her claim deemed nurse practitioners as an "other medical source". *See* 20 C.F.R. § 404.1502(7). Accordingly, the ALJ must give germane reasons for discounting this type of medical opinion evidence. *Shorter v. Saul*, 777 F. App'x 209, 211 (9th Cir. 2019). An ALJ can meet the requirement to give germane reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ gave several reasons for giving "little weight" to the nurse practitioner's statement. (R. at 34.) First, the ALJ notes that a nurse practitioner is not an acceptable medical source under the applicable rules. (*Id*.) This is true, but not a sufficient reason to

reject the opinion.  *See Camilli v. Berryhill*, 2019 WL 3412921, *8 (N.D. Cal. 2019) ("An ALJ cannot simply disregard the opinions of medical providers such as a nurse practitioner simply because they are not within the definition of 'acceptable medical sources.'").  Next, the ALJ rightly reasons that the determination of a disability is an issue ultimately reserved for the Commissioner.  (R. at 34.)  While true, this also does not suffice as a reason to reject medical opinion evidence.  This error is harmless, however, because, as explained below, the ALJ gave other germane reasons for rejecting the nurse practitioner's opinion.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding ALJ's reliance on an invalid reason to discredit claimant was "harmless error" where ALJ had also relied on other reasons that were valid).  The ALJ also pointed out that the nurse practitioner's assessment only addressed a period that began nearly a year after the alleged onset of Ms. Baldauf's symptoms.  (R. at 34.)  This is also not a germane reason but is harmless in light of the analysis below.

Another reason that the ALJ offered for giving the nurse practitioner's opinion little weight is that it is inconsistent with the record.  (*Id*.)  The nurse practitioner opined that Ms. Baldauf could not work due to PTSD, anxiety and bipolar disorder.  (*Id*.)  Further, according to the opinion, to the extent Ms. Baldauf could work, she would likely miss more than three days of work per month and have trouble with punctuality, working around others and maintaining a consistent performance.  (*See id*.)  Though the ALJ did not list the inconsistencies in the paragraph about the nurse practitioner's opinion, examining the neighboring paragraphs make clear the ALJ's reasoning.  The decision referenced the work of an examining consulting physician, whose opinion the ALJ assigned partial weight.  That doctor did not observe any behavioral abnormalities or any problems with Ms. Baldauf's ability to remain attentive.  (*Id*.)  The ALJ also noted that Ms. Baldauf received a perfect score of one of the examining physician's cognitive tests.  (*Id*.)  Further, the ALJ pointed to Ms. Baldauf's own statements about her decreased anxiety and dependency on alcohol, increased ability to sleep, and desire to take college classes.  (*Id*.)  The examining physician's observations about Ms. Baldauf's behavior, the

1    cognitive function testing and her own reports of improvement contradict the nurse
2    practitioner's finding that Ms. Baldauf could work and constitute germane reasons to
3    assign little weight to the nurse practitioner's opinion.

4        Ms. Baldauf argues that even assuming that the opinion was inconsistent with the
5    record, the ALJ should not have given this dispositive weight.  (Pl. Br. at 9.)  More
6    specifically, she argues that the ALJ should have looked to other factors listed in Social
7    Security Administration regulations, such as nature and length of the nurse practitioner's
8    relationship with the patient, how detailed of an explanation the opinion gave, and the
9    nurse practitioner's specialty in psychiatry.   20 C.F.R. § 404.1527(c).   The opinion
10   acknowledges the nurse practitioner's specialty and goes into the detailed findings of the
11   opinion, but it does not discuss the nature and length of the relationship between Ms.
12   Baldauf and the nurse practitioner.  (R. at 34.)  To the extent that this was error, it was
13   harmless because the ALJ gave germane reasons to assign little weight to the opinion by
14   setting out the conflicting evidence, interpreting it and making findings.  *Magallanes*, 881
15   F.2d at 751.   The Court finds no error in the ALJ's rejecting the nurse practitioner's
16   opinion.

17       **C.    Additional Report Medical Report while on Appeal**

18       Ms. Baldauf submitted a psychological evaluation completed by Dr. Ray Lemberg
19   to the Appeals Council.  Dr. Lemberg conducted this evaluation after the ALJ's decision.
20   When the Appeals Council notified Ms. Baldauf that it denied her appeal, it noted that
21   Dr. Lemberg's psychological evaluation did not "show a reasonable probability that it
22   would change the outcome of the decision."  (R. at 8.)  As a result, the Appeals Council
23   "did not exhibit [the evaluation] evidence."  (*Id.*)

24       Ms. Baldauf argues that this report is part of the administrative record and under
25   Ninth Circuit precedent, this Court should remand the case to the ALJ to consider the
26   evidence.  (Pl. Br. at 11-13.)  Specifically, the argument goes, *Brewes v. Commissioner of*
27   *Social Security Administration*, 682 F.3d 1157 (9th Cir. 2012), is on point and compels a
28   remand.  *Id.* at 1159.  According to Ms. Baldauf, SSA's inclusion of the opinion in the

- 7 -

certified administrative record supports this argument.   (Pl. Br. at 12.)   The Commissioner, by contrast, argues that because the Appeals Council did not exhibit the report in deciding whether to review the claim, *Bales v. Berryhill*, 688 F. App'x 495 (9th Cir. 2017), applies and the report is not part of the record.  *Id*. at 496.  (Def. Br. at 11.) Ms. Baldauf says that *Bales* is inapposite because unlike in that case, the Appeals Council actually considered the report she submitted.  (Reply at 6.)  The Court agrees with Ms. Baldauf.  While the Appeals Council did not file Dr. Lemberg's psychological evaluation as an exhibit, it nonetheless considered the report while deciding whether to grant review. (R. at 8.)  The Commissioner also argues that the ALJ stated that the report does not "relate to the period on or before the date of the administrative law judge hearing decision," thus bringing this issue into the scope of *Bales*.  (Def. Br. at 14.)  But the pages of the ALJ decision which the Commissioner cites make no such statement.

The Commissioner's Response also argues that an ALJ need not consider the report on remand because Dr. Lemberg does not have personal knowledge of Ms. Baldauf nor did he conduct any testing on her during the relevant period and because disability is ultimately a legal conclusion.  (Def. Br. at 12.)  While Dr. Lemberg does not qualify as a treating physician, the ALJ may – and indeed must – review his medical opinion evidence given his status as an examining physician.

**IV.     CONCLUSION**

Accordingly,

**IT IS ORDERED** reversing the July 2, 2018 decision of the Administrative Law Judge (R. at 28-37), as upheld by the Appeals Council (*Id*. at 7-9).

**IT IS FURTHER ORDERED** remanding this case to the Social Security Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

/ / /

/ / /

Dated this 6th day of August, 2020.

Michael T. Liburdi
United States District Judge